# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEITH FUQUA, an individual, )<br>STACY FUQUA, an individual, )<br>on behalf of themselves, and all )<br>others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LINDSEY MANAGEMENT CO, INC., )<br>and DOES 1 through 10, inclusive, )<br>)<br>Defendants. ) | Case No. CIV-07-827-HE |

## DEFENDANT LINDSEY MANAGEMENT CO. INC.'S
## RESPONSE AND OBJECTIONS TO
## PLAINTIFFS' MOTION TO REMAND AND BRIEF IN SUPPORT

Sidney G. Dunagan, OBA #2524
Amy M. Stipe, OBA #18361
Jeremy K. Webb, OBA #21057
GABLE GOTWALS
211 North Robinson, 15th Floor
Oklahoma City, Oklahoma 73102
Telephone:    (405) 235-5500
Facsimile:     (405) 235-2875
Email: sdunagan@gablelaw.com
         astipe@gablelaw.com
         jwebb@gablelaw.com

**Attorneys for the Defendant
Lindsey Management Co., Inc.**

Defendant, Lindsey Management Co., Inc. ("Lindsey") submits this response to Plaintiffs' Motion to Remand and Memorandum of Points and Authorities (Doc. No. 19) (the "Motion to Remand") and respectfully requests that this Court deny Plaintiffs' motion on the basis that this Court has subject matter jurisdiction over this action.

## INTRODUCTION

Lindsey was originally named as a defendant in a putative class action brought by plaintiffs Keith and Stacey Fuqua ("Plaintiffs") in the Oklahoma District Court for Cleveland County (the "Oklahoma State Court Action"). Plaintiffs attempt to bring the Oklahoma State Court Action on behalf of a putative class of allegedly similarly situated persons in the States of Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Oklahoma, Tennessee and Texas. Plaintiffs contend that the putative class members have all entered into a uniform lease agreement with Lindsey. *See* Plaintiffs' Petition at ¶¶9-10, attached to the Notice of Removal (Doc. No. 1) as Exhibit 2. Plaintiffs further allege *inter alia* that the liquidated damages and automatic lease renewal provisions purportedly used by Lindsey in this uniform lease agreement are unenforceable, unconscionable and in violation of the various Landlord-Tenant Acts and other laws of the various states in which the putative class members reside. *Id*. at ¶¶5-8. Accordingly, Plaintiffs seek: a declaration that the lease provisions in question are unlawful and unenforceable; actual damages and penalties allegedly stemming from the purportedly unlawful enforcement of such contract provisions; injunctive relief ordering the severance and elimination of such provisions from all of Lindsey's existing residential lease agreements; injunctive relief

preventing Lindsey from using such provisions in its prospective business practice; prejudgment interest; and costs and attorneys' fees. *Id*. at ¶¶11-35.

On July 25, 2007, Lindsey timely filed its Notice of Removal, contending that removal to the United States District Court was proper under the Court's general diversity jurisdiction, 28 U.S.C. §1332(a), and under jurisdiction conferred by the Class Action Fairness Act, 28 U.S.C. §1332(d). *See* Notice of Removal at ¶¶7 and 17. On October 11, 2007, Plaintiffs filed their Motion to Remand, which argues that this matter should be remanded to the Oklahoma District Court for Cleveland County because this Court allegedly lacks subject matter jurisdiction.[1] The sole basis for Plaintiffs' claim that subject matter jurisdiction is lacking is Plaintiffs' allegation that the amount in controversy requirements for general diversity jurisdiction and for CAFA jurisdiction have not been demonstrated.[2] However, as will be fully shown below, the *undisputed* affidavit evidence submitted with Lindsey's Notice of Removal clearly shows that the injunctive relief requested in Plaintiffs' Petition, *which would run in its entirety to any single Plaintiff or putative class member,* would cause a detriment to Lindsey in excess of the $75,000 amount

---

[1] Because Plaintiffs filed their Motion to Remand more than thirty (30) days after Lindsey filed its Notice of Removal, Plaintiffs have waived any objection they may have to any defect in Lindsey's Notice of Removal other than lack of subject matter jurisdiction. *See* 28 U.S.C. §1447(c).

[2] Plaintiffs Motion to Remand does not dispute any other jurisdictional element alleged in Lindsey's Notice of Removal. Accordingly, Lindsey assumes that Plaintiffs admit the other jurisdictional elements required for diversity and CAFA jurisdiction, including: (1) there is complete diversity of citizenship among the named parties; (2) this matter is a putative "class action" as defined by CAFA; (3) at least one member of the putative class is a citizen of a different state than the named defendants; (4) fewer than one-third of the putative class members are citizens of the state in which this action was originally filed (Oklahoma); and (4) the putative class has more than one-hundred (100) members. *See* 28 U.S.C. §1332.

2

in controversy required for general diversity jurisdiction. Furthermore, the *undisputed* affidavit evidence shows that the aggregate monetary damages sought on behalf of the putative class are in excess of the $5,000,000 amount in controversy required for CAFA jurisdiction. Therefore, there is a sufficient amount in controversy for this Court to assert subject matter jurisdiction.

## ARGUMENT AND AUTHORITIES

**I.    THE UNDISPUTED EVIDENCE ESTABLISHES AN AMOUNT IN CONTROVERSY SUFFICIENT TO CONFER GENERAL DIVERSITY JURISDICTION**

United States District Courts have subject matter jurisdiction over civil actions where there is (1) a diversity of citizenship among the parties; and (2) an amount in controversy in excess of $75,000, exclusive or interest and costs. *See* 28 U.S.C. §1332(a). Lindsey's Notice of Removal and the attached affidavit of Lindsey's Chief Financial Officer, D. Scott Rogerson, argues that diversity jurisdiction is proper in this case because Plaintiffs are citizens of a different state than Lindsey; and because the injunctive relief demanded by Plaintiffs would cause an annual detriment to Lindsey far in excess of $75,000, exclusive of interest and costs. *See* Notice of Removal at ¶¶2-7. Plaintiffs now challenge that removal under the theory that Lindsey has failed to establish the required $75,000 in controversy for general diversity jurisdiction by a preponderance of the evidence. This theory is based on Plaintiffs' allegations that (1) Lindsey has failed to show that the requested injunction would cause in excess of $75,000 in detriment to Lindsey *per class member*; and (2) Lindsey, in computing the jurisdictional amount in

controversy, has failed to account for certain set-offs it *might* be entitled to based on anticipated affirmative defenses. Both of these arguments fail.

### A. *The Requested Injunctive Relief, Which Would Run in its Entirety to Any Single Plaintiff or Putative Class Member, Would Cause a Detriment to Lindsey in Excess of $75,000*

Plaintiffs' correctly note in their Motion to Remand that in a class-action the claims of a class may not be aggregated to reach the required amount in controversy for general diversity jurisdiction under 28 U.S.C. 1332(a). *See Lovell v. State Farm Mut. Auto. Ins. Co.,* 466 F.3d 893, 897-898 (10th Cir. 2006).[3] Furthermore, Lindsey concedes, as Plaintiffs' point out in their Motion to Remand, that the *actual monetary damages* sought on behalf of each individual putative class member do not amount to $75,000 *per plaintiff*. However, Lindsey has not removed this action under the theory that each individual Plaintiff or putative class member was seeking damages in excess of $75,000. Instead, Lindsey removed this action under the theory that the injunctive relief demanded by Plaintiffs *on behalf of each and every individual Plaintiff or putative class member* would cause a detriment to the proper defendant in excess of $75,000, exclusive of interest and costs.[4] *See* Notice of Removal at ¶6.

Where injunctive relief is requested in the Tenth Circuit, the amount in controversy for purposes of general diversity jurisdiction may be determined by the

---

[3] Plaintiffs also correctly note that the party seeking to remove a matter under the general diversity jurisdiction bears the burden of proving the jurisdictional requirements. *See e.g. Laughlin v. K-Mart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995).

[4] Lindsey maintains that it is not a party to these residential lease agreements, and therefore is not a proper defendant in this action. However, as will be shown below, such an affirmative defense is immaterial to the determination of whether there is a sufficient amount in controversy for jurisdictional purposes.

4

detriment the requested injunction causes the defendant.  *See Hunt v. Wash. State Adver. Comm'n,* 432 U.S. 333, 347 ("the amount in controversy is determined by the value of the object of litigation"); *Oklahoma Retail Grocers Assoc. v. Wal-Mart Stores, Inc.,* 605 F.2d 1155, 1160 (10th Cir. 1979) (in an injunction case, "the impact on the defendant, including the cost of the injunction is a proper element for consideration" in determining requisite jurisdictional amount for diversity jurisdiction); *see also In re General Motors Corp. "Piston Slap" Products Liability Litigation,* 2005 WL 1606445 (W.D.Okla. July 6, 2005) (holding that the cost to defendant of compliance with an injunction sought in a putative class action would be considered as part of the amount in controversy with respect to the $75,000 jurisdictional requirement of 28 U.S.C. § 1332(a)).

In this case, Plaintiffs have requested various forms of injunctive relief, including an injunction prohibiting Lindsey from using certain "liquidated damages" and "automatic renewal" provisions in prospective residential lease agreements and an order severing such provisions from all existing residential lease agreements in the states in question.  *See* Plaintiffs' Oklahoma State Court Action Petition at ¶¶ 18, 23 and 30, attached to the Notice of Removal as Exhibit 2.  As pled by Plaintiffs, this requested injunctive relief *would run to every individual plaintiff or putative class member.*  In other words, Plaintiffs are requesting this injunctive relief in its entirety regardless of class size and even in the event the class is composed of only a single plaintiff.  For that reason, the cost of compliance with such an injunction should not be apportioned among the putative class members, as suggested by Plaintiffs.  *See In re General Motors Corp., "Piston Slap" Products Liability Litigation*, 2005 WL 1606445, *6 (W.D.Okla. July 6,

2005) (holding that diversity jurisdiction was proper where a putative class sought an injunction that could not be apportioned to the individual class members and which would cause a detriment in excess of $75,000 to the defendant).

Lindsey has presented undisputed affidavit evidence that over $1,000,000 is collected annually pursuant to the lease provisions Plaintiffs seek to prohibit. *See* Affidavit of D. Scott Rogerson at ¶3, attached to the Notice of Removal as Exhibit 1. Accordingly, prohibiting the use of such provisions and severing them from the residential lease agreements in question would cost the proper defendant well in excess of $75,000. Moreover, such an injunction would force the proper defendant, whom Plaintiffs argue is Lindsey, to alter its business practices in order to pursue early termination damages through means other its contractual liquidated damages provisions.

At the very least, this change in business practices would require: (1) the development of a different system to calculate and collect early termination damages at over 125 residential apartment complexes; (2) the training of employees at over 125 residential apartment complexes to administer the new system of calculating early termination damages; (3) the rewriting of nearly 28,000 existing residential lease agreements in order to remove the allegedly offending provisions or replace them with "acceptable" provisions; (4) the printing and distribution of nearly 28,000 new residential lease agreements; (5) the printing and distribution of nearly 28,000 notices to lessees regarding the removal of the relevant terms from their existing lease agreements; (6) the use of significant employee time to renegotiate the severed early termination and renewal provisions of nearly 28,000 existing lease agreements at over 125 residential apartment

complexes; and (7) the use of significant employee time to answer potential questions from tenants regarding the mandated change in lease terms for the nearly 28,000 affected lease agreements at over 125 residential apartment complexes.  Lindsey estimates the cost of such business adjustments to be well in excess of $75,000.  *See* Second Affidavit of D. Scott Rogerson, attached hereto as **Exhibit 1**.  Again, the proper defendant would shoulder the full cost of these business alterations, even if the class in this matter ultimately consisted of a single plaintiff.

Importantly, Plaintiffs do not present any evidence and make no argument challenging the accuracy of the figures presented in the Affidavit of D. Scott Rogerson.  Nor do Plaintiffs argue that the requested injunctive relief is more limited than described here.  In fact Plaintiffs admit in their Motion to Remand that the "[r]equested relief would, indeed, require [Lindsey] to invalidate the liquidated damages provision it currently has in all its contracts."  *See* Motion to Remand at pg. 8.  Accordingly, Plaintiffs appear to admit that compliance with the requested injunctive relief would cost the proper defendant more than $75,000.  Instead, Plaintiffs contend that this case should be remanded because Lindsey has failed to make a showing that compliance with the demanded injunction would cost the proper defendant in excess of $75,000 *per plaintiff*.

Plaintiffs support this argument by citing to the recent decision of *Lovell v. State Farm Mut. Auto. Ins. Co.,* 466 F.3d 893 (10th Cir. 2006), for the proposition that injunctive relief requested in a class action may not be aggregated to establish the amount in controversy.  Plaintiffs clearly misapply the holding from *Lovell* to the allegations made in this case.  In *Lovell*, the plaintiffs sued State Farm Insurance on behalf of a

7

putative class claiming that State Farm's uniform auto insurance policy failed to cover diminution in value as purportedly required by Colorado law. *Id.* at 895. Accordingly, the plaintiffs sought actual damages on behalf of the class, a declaration that all existing State Farm policies were to cover diminution in value, and an injunction ordering State Farm to develop a system to determine and pay diminution in value. *Id*. at 896. Plaintiffs ultimately moved to remand the case under the theory that the class members' claims could not be aggregated to reach the amount in controversy for diversity jurisdiction. *Id.*

In holding that the diversity jurisdiction threshold was met, the *Lovell* court noted that "while a court may look to the compliance costs [for compliance with an injunction] of a defendant in multiple plaintiff cases, the cost running to each plaintiff must meet the amount in controversy..." However, the *Lovell* court also made clear that where compliance with the requested injunction exceeds the jurisdictional amount, and where the requested injunction is sought in its entirety for each individual plaintiff, then the cost of the injunction is not apportioned to each plaintiff and the jurisdictional threshold is met. *Id*. at 898. Accordingly, because the cost for State Farm to alter its business practice in conformity with the requested injunction was in excess of $75,000, and because the requested injunction would run in its entirety to each individual putative plaintiff, the *Lovell* court held that the amount in controversy was proven. *Id*. The facts of the instant case are similar. Compliance with the injunctive relief requested by Plaintiffs will unquestionably cost the proper defendant in excess of $75,000. Moreover, the injunctive relief requested would run in its entirety to each individual plaintiff regardless of the ultimate size of the class in this matter. Therefore, the cost of

8

compliance with the injunction should not be apportioned to each potential individual plaintiff because the full cost of the injunction would be incurred by the proper defendant even if the class consisted of a single plaintiff. For this reason, general diversity jurisdiction is proper in this case under the holding in *Lovell*.

This Court reached a similar conclusion in the *In re General Motors Corp., "Piston Slap" Products Liability Litigation*, 2005 WL 1606445 (W.D.Okla. July 6, 2005). In that case the Court made an inquiry into the propriety of general diversity jurisdiction in a putative class-action where the amount in controversy was based solely on the cost of compliance with requested injunctive relief. In *Piston Slap Litigation,* the plaintiffs contended that General Motors ("GM") had produced certain engines with a mechanical defect. *Id*. at *1. Accordingly, the plaintiffs sought actual damages and an injunction prohibiting the sale of the allegedly defective engines. *Id*. at *3. The Court concluded that the actual damages for each putative class member did not amount to $75,000 per plaintiff. *Id*. at *6. The Court also concluded that compliance with an injunction prohibiting the sale of such engines would cost GM in excess of $75,000. *Id*. In holding that general diversity jurisdiction did exist, the Court noted that the requested injunctive relief (*i.e*. the prohibition on selling the engine), as demanded by the plaintiffs, could not be apportioned among the putative class members. Therefore, because the cost

9

of complying with such an injunction exceeded the jurisdictional minimum, general diversity jurisdiction was proper.[5]

Again, the facts of the instant case are similar, as compliance with the injunctive relief requested here will unquestionably cost the proper defendant in excess of $75,000. Moreover, as in the *Piston Slap Litigation*, the injunctive relief requested here cannot be apportioned per plaintiff because as demanded it would run in its entirety to each individual plaintiff regardless of the size of the class. Accordingly, general diversity jurisdiction is proper under the Court's prior holding in the *Piston Slap Litigation*.

### B. The Amount in Controversy for Purposes of Subject Matter Jurisdiction is Determined By Plaintiffs' Petition, And It May Not Be Reduced by Anticipated Affirmative Defenses

Plaintiffs also argue that general diversity jurisdiction is not proper because Lindsey has allegedly failed to reduce its computation of the amount in controversy by amounts it *may* be entitled to recover pursuant to certain potential affirmative defenses and set-offs. Plaintiffs cite absolutely no authority for the proposition that the amount in controversy for jurisdictional purposes must be reduced by amounts *potentially* recoverable on an affirmative defense or through a set-off. To the contrary, the amount in controversy for jurisdictional purposes is determined at the time the complaint is filed. *Spielman v. Genzyme Corp.,* 251 F.3d 1, 5 (1st Cir. 2001). Accordingly, affirmative defenses are not considered in determining the amount in controversy. See *Scherer v. The Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 397-98 (2d Cir. 2003)

---

[5] The Court also noted that it was unlikely that such non-apportionable injunctive relief would be granted, but that under the applicable deferential standard, the Court could not say to a legal certainty that such relief would not be available. *Id*. at *6.

10

("affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy"). Moreover, a possible defense, however good and likely to be pleaded in response to the complaint, will not affect the amount in controversy. *Smithers v. Smith*, 204 U.S. 632, 642, 27 S.Ct. 297, 299, 51 L.Ed. 656 (1907); *Schunk v. Moline, Milburn & Stoddard Co.*, 147 U.S. 500, 505, 13 S.Ct. 416, 417, 37 L.Ed. 255 (1893); 14B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3702 at 74-76 (West, 3d ed. 1998); see also *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim.") Therefore,

> [a]lthough there might be a perfect defense to the suit ..., yet the fact of a defense, and a good defense, too, would not affect the question as to what was the amount in dispute.... In short, the fact of a valid defense to a cause of action, although apparent on the face of the petition, does not diminish the amount that is claimed, nor determine what is the matter in dispute....

*Schunk*, 147 U.S. at 504-05, 13 S.Ct. at 417; *see also Smith*, 204 U.S. at 642-43, 27 S.Ct. at 300; *Ochoa v. Interbrew America, Inc.*, 999 F.2d 626, 628-29 (2d Cir. 1993); *Jihaad v. O'Brien*, 645 F.2d 556, 561 (6th Cir. 1981); *James v. Lusby*, 499 F.2d 488, 492 (D.C.Cir.1974); *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969); *Anderson v. Moorer*, 372 F.2d 747, 750 (5th Cir. 1967).

The purported actual early lease termination damages to which Plaintiffs contend Lindsey would be entitled are merely a potential affirmative defense. Lindsey may or may not choose to raise such defense, and Lindsey may or may not be successful in

11

proving such defense to the extent it is raised.[6]  Moreover, Plaintiffs' allegation that Lindsey is entitled to a purported set-off is irrelevant. A set-off is an affirmative defense, not a claim for relief, *see Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 n. 36 (5th Cir. 2001), because it is entirely contingent on Lindsey proving its right to recovery.  Accordingly, an alleged set-off cannot be used to reduce the computation of the amount in controversy. *See Rosen v. Chrysler Corp.,* 205 F.3d 918, 921-22 (6th Cir. 2000) (refusing to include defendant's set-off in determining the amount in controversy).

Lindsey has presented undisputed affidavit evidence that the cost of compliance with Plaintiffs' requested injunctive relief would be far in excess of $75,000.  This amount in controversy may not be whittled down by potential affirmative defenses or offsets.[7]  Accordingly, the amount in controversy necessary for general diversity jurisdiction has been shown by a preponderance of the evidence.

### II.  THE UNDISPUTED EVIDENCE ESTABLISHES AN AMOUNT IN CONTROVERSY SUFFICIENT TO CONFER JURISDICTION UNDER CAFA

CAFA confers subject matter jurisdiction on the United States District Courts for all actions where: (1) the action is a "class action" as defined by CAFA; (2) there is an

---

[6] Lindsey's Answer does not currently list such a set-off or claim for actual lease termination damages as an affirmative defense.  *See* Lindsey's Answer (Doc. No. 11)

[7] Without the rule against using affirmative defense and set-offs to whittle down the amount in controversy "doubt and ambiguity would surround the jurisdictional base of most diversity litigation from complaint to final judgment[, and i]ssues going to a federal court's power to decide would be hopelessly confused with the merits themselves." *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982).  For example, Lindsey contends it is not a party to any of the lease agreements in question.  If successful on such affirmative defense, Plaintiffs would recover nothing from Lindsey. However, merely asserting such an affirmative defense cannot reduce the amount in controversy below the jurisdictional threshold.

aggregate amount in controversy for all putative class members exceeding the sum of five-million dollars ($5,000,000), exclusive of interest and costs; (3) at least one member of the putative class is a citizen of a different state than one of the defendants; (4) fewer than one-third of the putative class members are citizens of the state in which the action was originally filed;[8] and (5) the putative class has more than one-hundred (100) members. *See* 28 U.S.C. §1332(d). Plaintiffs contend that the CAFA jurisdiction is lacking because the amount in controversy requirement of $5,000,000 has not been met by a preponderance of the evidence, but apparently concede that all other CAFA prerequisites have been established.[9] Plaintiffs' theory that the CAFA amount in controversy has not been demonstrated is premised solely on the argument that Lindsey has failed to reduce its computation of the aggregate class damages to account for possible set-offs or damage limitations that Lindsey *may* be able to recover under certain affirmative defenses. This theory fails, because as noted above, affirmative defenses and set-offs may not be used to reduce the amount in controversy as pled in a plaintiff's petition. Therefore, since Plaintiffs have not otherwise challenged the accuracy of Lindsey's computation of the aggregate class damages, Lindsey has demonstrated the requisite CAFA amount in controversy by a preponderance of the evidence.

---

[8] District Courts *may*, in the interests of justice, exercise or decline to exercise jurisdiction over a class-action in which greater than one-third but less than two-thirds of the putative class members are citizens of the state in which the action was originally filed. District Courts must decline jurisdiction over a class where more than two-thirds of the putative class members are citizens of the state in which the action was originally filed. *See* 28 U.S.C. §1332(d)(3) and (4).

[9] Lindsey acknowledges that as the removing party, it bears the burden of establishing the CAFA jurisdictional prerequisites by a preponderance of the evidence. *See e.g. Plummer v. Farmers Group, Inc.* 388 F.Supp. 2d 1310, 1318 (E.D.Okla. 2005).

### A. Lindsey's Undisputed Affidavit Evidence Establishes the Required Amount in Controversy for CAFA Jurisdiction, The Amount In Controversy May Not Be Reduced By Potential Affirmative Defenses or Set-Offs

Plaintiffs' Petition seeks *inter alia* actual damages stemming from Lindsey's purported enforcement of the contract provisions in question. See Plaintiffs' Petition at ¶27. This demand is not temporally limited, and would necessarily include the recovery of any liquidated damages collected pursuant to the lease provisions in question. Therefore, Lindsey has provided undisputed affidavit evidence establishing that in excess of $5,000,000 in liquidated damages have been collected to date pursuant to the provisions in question, and that in excess of $1,000,000 is collected annually pursuant to such provisions. *See* Affidavit of D. Scott Rogerson, attached to Notice of Removal as Exhibit 1, at ¶¶3-4. Plaintiffs do not challenge the accuracy of these figures. Instead, Plaintiffs contend that Lindsey should have reduced the computed amount of aggregate damages by the amount of early lease termination damages it will purportedly be able to recover as a set-off under applicable law. Plaintiffs additionally argue that because certain of the putative class members are subject to differing statutes of limitations, some of the liquidated damages outlined by Lindsey may not be recovered by the class.[10]

However, as noted above, affirmative defenses and set-offs may not reduce the amount in controversy for purposes of subject matter jurisdiction. Moreover, the fact that Plaintiffs point to a specific statute of limitations that purportedly bars part of the putative

---

[10] Plaintiffs' admission that the members of the putative class are subject to different statues of limitations indicates that the proposed class is not appropriate as the law applicable to class members will differ based on state of residence. *See e.g.* FED. R. CIV. P. 23(a).

class's recovery is immaterial. Lindsey may or may not raise a statute of limitations defense, and it will still be required to argue and prove that affirmative defense to the extent it is raised.[11] Therefore, waivable affirmative defenses, *such as a statute of limitations*, are not considered in determining the amount in controversy for jurisdictional purposes. See *e.g. Scherer v. The Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 397-98 (2d Cir.2003); *Giffin v. Smith,* 256 F.Supp. 746, 747 (N.D.Okla.1966) (potential statute of limitations defense may not reduce amount in controversy for jurisdictional purposes); *see also* authority cited in Section I(B) *infra*.

Lindsey has presented undisputed affidavit evidence establishing by a preponderance of the evidence that the damages sought by the putative class exceed $5,000,000, exclusive of interest and cost. Plaintiffs have failed to present evidence questioning the amount of class damages as computed by Lindsey, and Plaintiffs have offered no legally cognizable reason why the amount in controversy as computed by Lindsey should be reduced or disregarded. Accordingly, Lindsey has established the requisite jurisdictional amount by a preponderance of the evidence.

## **CONCLUSION**

For the forgoing reasons, Lindsey respectfully requests that the Court deny Plaintiffs' Motion to Remand on the basis that the Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(a) and/or 28 U.S.C. §1332(d).

---

[11] Lindsey's Answer does not currently list the statute of limitations as an affirmative defense.

15

Respectfully submitted,

/s/ Jeremy K. Webb
Sidney G. Dunagan, OBA #2524
Amy M. Stipe, OBA #18361
Jeremy K. Webb, OBA #21057
GABLE GOTWALS
211 North Robinson, 15th Floor
Oklahoma City OK 73102
Telephone:   (405) 235-5500
Facsimile:    (405) 235-2875

**ATTORNEYS FOR DEFENDANT LINDSEY MANAGEMENT CO., INC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2007 I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Terry W. West
Bradley C. West
Brian R. Strange
*Attorneys for Plaintiffs*

/s/ Jeremy K. Webb