**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KEITH FUQUA, an individual; ) | Case No. 5:07-CV-00827-HE |
| STACY FUQUA, an individual, ) | |
| on behalf of themselves and all others ) | **CLASS ACTION** |
| similarly situated, ) | |
| ) | Case assigned to the Honorable Joe Heaton |
| Plaintiffs, ) | |
| ) | Action Filed on June 29, 2007 |
| vs. ) | Action Removed on July 25, 2007 |
| ) | |
| ) | |
| ) | |
| LINDSEY MANAGEMENT CO., INC., ) | |
| and ( DOES 1 through 10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT LINDSEY
MANAGEMENT CO., INC.'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs Keith and Stacy Fuqua ("Plaintiffs") bring this class action on behalf of themselves and all persons who have entered into residential lease agreements with Defendant Lindsey Management Co., Inc. ("Lindsey" or "Defendant"), or entities owned and operated by Defendant, in the States of Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Oklahoma, Tennessee, and Texas.  The basic allegations are that Defendant's lease agreements contain unlawful, unfair, and unconscionable terms.

Specifically, Plaintiffs' Lease provides that, if a tenant "vacates the apartment without having paid rent for the entire term, and any extension thereof," then Lindsey is entitled to "liquidated damages" measured as "an amount equal to one-half of the rent calculated from the first day of the month following the date on which [the tenant] vacates the apartment through the end of the lease term; but in no event shall the amount . . . exceed an amount equal to three months' periodic rent as provided in the [Lease]." Under this provision, a tenant paying $500 per month, who vacates his apartment three months before the lease terminates, would be assessed a $750 penalty, even if Defendant mitigated its damages and leased the apartment shortly after the lessee vacated.

In addition, Plaintiffs' Lease also provides that a tenant must give 30 days' written notice of intent to move out, including written notice at least 30 days prior to the termination of the initial lease term if the tenant intends to move out at the end of the lease term.  If the tenant does not give at least 30 days' notice of intent to move out, Defendant has the option to renew the lease for the same term as the immediately

preceding lease term.  This action challenges these unlawful, unconscionable, and unfair residential lease provisions.

On March 12, 2008, Defendant filed this motion for summary judgment on the ground that it is not a proper defendant in this action.  Defendant's sole argument is that it cannot be held liable for the unlawful provisions contained in each of its lease agreements because it does not own the properties it manages and because it is not technically a "party" to the lease agreements.  According to Defendant, this Court should grant summary judgment because "[t]here is simply no basis in Oklahoma law ... that would support holding a *stranger* to a contract liable in any way for the alleged unlawfulness or unenforceability of that contract."  Defendant's Motion for Summary Judgment ("MSJ") at 8 (emphasis added).  While that may be, the suggestion that Defendant is a "stranger" to the lease agreements in question is disingenuous, to say the least.  As the undisputed facts show, Defendant drafted the lease agreements in question and had the sole authority to determine the content of those agreements.  The undisputed facts also show that Defendant has the exclusive authority "to organize, manage, supervise, and conduct *all leasing operations*."  Defendant, the entity that drafted and enforced the unlawful lease agreements, should not be allowed to escape liability just because it did not "sign" the contracts in question under its own name (or, as appears to be the case, because it signed the documents on behalf of the property owners).  As discussed in more detail below, Defendant's motion for summary judgment should be denied in its entirety.

First, Defendant's argument that it cannot be held liable under Oklahoma's

Residential Landlord and Tenant Act because it is not a landlord, is incorrect. Defendant's argument ignores the fact that Oklahoma's Residential Landlord and Tenant Act defines a landlord as an "owner, *lessor* or sublessor." As the undisputed facts demonstrate, Defendant is a *lessor*, and is thus liable under the statute.

Second, Defendant's argument with respect to Plaintiffs' unfair business practices claims is based on the false assumption that if Defendant is not liable under Oklahoma's Residential Landlord and Tenant Act, the claim under Oklahoma's Consumer Protection Act *necessarily* fails. This also is not true. Oklahoma's Consumer Protection Act covers a much broader range of conduct (by a broader scope of defendants) than the Residential Landlord and Tenant Act. Thus, even if this Court were to find Defendant immune from liability under Oklahoma's Residential Landlord and Tenant Act (which it should not), a finding that Defendant is not the proper defendant under Oklahoma's Residential Landlord and Tenant Act *does not necessitate* a finding that Defendant did not engage in unfair business practices under Oklahoma's Consumer Protection Act.

Third, Defendant's argument that this Court does not have the authority to issue the declaratory relief Plaintiffs seek is incorrect. Where Defendant acts as the sole drafter and enforcer of the unlawful lease provisions and where relief against Defendant would be the only way to fully remedy the situation, declaratory relief is appropriate.

Fourth, Defendant's argument that it cannot have breached its duty of good faith and fair dealing because it is not a party to the contract at issue, ignores the fact that Oklahoma courts have held other similar non-parties liable where those non-parties have

"the power, motive and opportunity to act unscrupulously," as is the case here.

Because Defendant has not established that it is entitled to summary judgment on any of its claims, its motion should be denied in its entirety.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On or about November 4, 2005, Plaintiffs Keith and Stacy Fuqua ("Plaintiffs") entered into a contract to lease an apartment at a complex known as The Greens at Moore. The lease contained both an early termination penalty provision and an automatic renewal provision. *See* Lease Agreement, dated November 4, 2005, at ¶¶ 3, 4, 19; attached as Exhibit A to Affidavit of Terry W. West ("West Aff.").

2. When Plaintiffs moved out of their apartment they were charged an early termination fee penalty totaling one-half of the rent they would have owed for the remaining term of the lease, or $1,140.00. *See* Affidavit of Keith and Stacey Fuqua, at ¶ 4.

3. The lease agreements in question (including the lease agreement signed by Plaintiffs), were drafted by Defendant Lindsey Management Company and its legal counsel. *See* Answer to Interrogatory No. 6, Defendant Lindsey Management Co, Inc.'s Responses to Plaintiffs' Second Set of Interrogatories at 6; attached as Exhibit B to West Aff.

4. Defendant Lindsey Management Company manages over 100 residential apartment properties pursuant to the terms of a Management Agreement it enters with the various owners of the properties. *See* Answer to Interrogatory No. 4, Defendant Lindsey

Management Co, Inc.'s Responses to Plaintiffs' Second Set of Interrogatories at 5; attached as Exhibit B to West Aff.

5. According to the terms of the Management Agreement entered into between Defendant Lindsey Management Company and the various property owners, each owner "appoints Management Agent [Lindsey] exclusively to lease, operate, and manage the property ..." *See* Management Agreement dated January 31, 2001, between Lindsey and The Greens at Moore at 1, ¶ I(A), attached as Exhibit C to West Aff.

6. Defendant Lindsey Management Company has the exclusive responsibility and authority "to organize, manage, supervise, and conduct all leasing operations" and to "sign, renew, extend and/or cancel leases or rental agreements for the Property." *See* Management Agreement dated January 31, 2001, between Lindsey and The Greens at Moore at 4, ¶ III(A), attached as Exhibit C to West Aff.

7. Defendant Lindsey Management Company is "responsible for full compliance with state and municipal laws, ordinances, regulations and orders relative to the leasing, use, operation, repair, and maintenance of the Property." *See* Management Agreement dated January 31, 2001, between Lindsey and The Greens at Moore at 9, ¶ VII(A), attached as Exhibit C to West Aff.

8. The various property owners have agreed to "indemnify and hold Management Agent [Lindsey] harmless from and against all claims, damages and costs (including attorneys' fees) arising out of or in connection with the management of the Property and the operation thereof." *See* Management Agreement dated January 31,

2001, between Lindsey and The Greens at Moore at 8, ¶ V(A), attached as Exhibit C to West Aff.

8.   Defendant collects over one-million dollars ($1,000,000) per year in penalties "from persons who have entered into residential leases at properties managed by Lindsey Management Co., Inc." *See* Affidavit of D. Scott Rogerson at ¶ 3, Exhibit 1 to Defendant's Notice of Removal; attached as Exhibit D to West Aff.

### III.   ARGUMENT

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998). "The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*.

"In deciding a motion for summary judgment, a court views the evidence of record and draws all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Campbell v. Wal-Mart Stores, Inc.*, 272 F. Supp. 2d 1276, 1283 (N.D. Okla. 2003) (internal citations omitted). "A summary judgment motion does not empower a court to act as the jury and determine witness' credibility, weigh the evidence, or choose between competing inferences." *Id.* Because the undisputed evidence shows that Defendant is *not* entitled to judgment as a matter of law, Defendant's motion for summary judgment should

be denied in its entirety.

**A.     Defendant is a "Lessor" and Can Therefore Be Held Liable For Violations of Oklahoma's Residential Landlord and Tenant Act**

Defendant argues that Plaintiffs cannot recover against it for violation of the Oklahoma Landlord Tenant Act (the "Act") because Defendant is not a "landlord" within the meaning of the statute, "and is therefore not subject to the duties imposed on landlords by the Act." MSJ at 10. However, a plain reading of the statute demonstrates that Defendant, as a lessor of the properties in question, is indeed a landlord as defined by the Act. The Act defines a "landlord" as:

> ...[T]he owner, *lessor* or sublessor of the dwelling unit or the building of which it is a part, manufactured or mobile home site, space or lot, and it also means a manager of the premises who fails to comply with the disclosure provisions of Section 116 of this title.

41 Okl. St. Ann.§ 102(5) (emphasis added).

Despite its bald statements to the contrary, Defendant has not presented any evidence (let alone undisputed evidence) demonstrating that it is not a lessor. In fact, the opposite is true ─ the undisputed evidence clearly establishes that Defendant is a lessor of the apartment properties in question. *See* Facts 5 and 6.

The Oklahoma Commercial Code defines a lessor as "a person who transfers the right to possession and use of goods under a lease." 12A Okl. St. Ann. § 2A-103(p). Here, Defendant has the sole exclusive authority "to organize, manage, supervise, and conduct all leasing operations" and to "sign, renew, extend and/or cancel leases or rental

agreements for the Property." *See* Management Agreement dated January 31, 2001, between Lindsey and The Greens at Moore at 4, ¶ III(A), attached as Exhibit C to West Aff. Clearly, Defendant qualifies as someone "who transfers the right to possession and use of goods under a lease." *See* 12A Okl. St. Ann. § 2A-103(p).

Defendant seems to argue that because it is a "manager" who has complied with Section 116, it cannot also be a "lessor" under the Act. This argument, however, defies common sense. Under the logic of this argument, an owner who also happens to manage his property would not also qualify as an owner under the Act because he concurrently qualifies as a manager. Quite obviously, this cannot be. For the same reasons, Defendant's argument that it cannot be a lessor because it concurrently acts as a manager must fail. Although the Act does exclude a manager who gives notice under section 116, this exclusion can apply *only* to a manager that is not simultaneously an owner, lessor or sublessor. *See* 41 Okl. St. Ann.§ 102(5). Because the undisputed facts demonstrate that Defendant is a "lessor" of the property (and properties) in question, Defendant's motion for summary judgment must be denied.

**B.     Plaintiffs' Unfair Business Practices Claim Survives Summary Judgment Whether or Not Defendant Falls Under the Definition of a Landlord in Oklahoma's Residential Landlord and Tenant Act**

Defendant's sole argument with respect to Plaintiffs' unfair business practices claim under Oklahoma's Consumer Protection Act ("OCPA") is that because Defendant is not liable under Oklahoma's Residential Landlord and Tenant Act, the unfair business

practices claim *necessarily* fails.[1]  MSJ at 12.  This is simply not true.  Even if this Court were to hold that the Defendant can not be liable under Oklahoma's Landlord Tenant Act because Defendant does not fall under the statutory definition of a "landlord," Defendant would still be liable for unfair business practices under the OCPA.  *See* 15 Okla. Stat. §§ 751, *et. seq*.

The OCPA "was enacted to protect unfair and deceptive trade practices and ... it provides a private right of action for aggrieved consumers."  *Chapman v. Chase Manhattan Mortgage Corp.*, 2007 WL 2815246, *3 (N.D. Okla. 2007) (No. 04-CV-0859).  *See also* 15 Okla. Stat. § 761.1.  "Because the OCPA is remedial in nature it is to be liberally construed to effectuate its underlying purpose."  *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).

In order to state a claim under the OCPA, a plaintiff must allege four elements: (1) that the defendant engaged in an unlawful practice as defined in 15 Okla. Stat § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice

---

[1] Of course, as Defendant's argument concedes, if this Court were to hold (as it should) that Defendant can be held liable as a lessor under Oklahoma's Landlord Tenant Act (see Section A, above), then summary judgment would also be inappropriate on Plaintiffs' unfair business practices claims brought under Oklahoma's Consumer Protection Act.

caused plaintiff's injury.  *Patterson*, 19 P.3d at 846; *Chapman*, 2007 WL 2815246 at *3.  Here, all four elements have been met.

First, Defendant has engaged in an unlawful practice as defined in 15 Okla. Stat § 753.  Section 753 lists a number of "unlawful acts" under the OCPA, including, when a person or entity "commits an unfair or deceptive trade practice as defined in Section 752 of this title."  15 Okla. Stat § 753 (20).  Section 752 defines an unfair trade practice as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  15 Okla. Stat § 752 (14).

Here, Defendant has included penalty provisions and automatic renewal provisions in all of its residential leases, which clearly violates the OCPA (and the landlord tenant acts of, at a minimum, Alabama, Kansas, Mississippi, Nebraska, Tennessee and Texas).  *See* 41 Okla. Stat. §§ 101, *et seq*.  Without question, the inclusion of these unlawful lease provisions offend established public policy.  In addition, Defendant's inclusion of these provisions in its standard lease agreement is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  By including these lease provisions, Defendant takes advantage of its superior bargaining position to unfairly collect over $1,000,000 per year in improper penalties.  *See* Fact 9.

Defendant seems to argue that if it cannot be held liable under Oklahoma's Residential Landlord and Tenant Act, then it cannot be liable for the same actions under the OCPA ─ but this is not so.  If Defendant is allowed to escape liability under

11

Oklahoma's Landlord Tenant Act, it will be solely on the grounds that Defendant, as a property management company, is not included in the statute's purview — not because Defendant's actions did not constitute a violation of the Act. *See* MSJ at 9-11. Whether or not Oklahoma's Residential Landlord and Tenant Act applies to Defendant says nothing about whether Defendant's behavior violates public policy and/or is immoral, unethical, oppressive and/or unscrupulous. Indeed, just the opposite is true: we know for certain that Defendant's behavior offends established public policy because, as noted above, the lease provisions in Defendant's lease agreements have been outlawed by Oklahoma's Residential Landlord and Tenant Act (as well as the landlord tenant acts of, at a minimum, Alabama, Kansas, Mississippi, Nebraska, Tennessee and Texas).

      The second, third and fourth prongs of the OCPA are easily met as well. The second prong requires that the challenged practice occurred in the course of defendant's business, which is undisputed here. Without question, Defendant is in the business of managing residential apartment buildings and conducting the leasing activities of those buildings. *See* Facts 4 and 5. The third prong is met because Plaintiffs have been injured by Defendant's inclusion of the unlawful and unfair lease provisions. Indeed, it is undisputed that the representative Plaintiffs were charged an early termination fee of $1,140.00. *See* Fact 2. It is similarly undisputed that the Plaintiff class has paid over $1,000,000.00 per year in unlawful penalties. *See* Fact 9. Finally, with respect to the fourth prong, it is clear that all injuries suffered by Plaintiffs were caused by the challenged practice (the unlawful liquidated damage and automatic renewal provisions).

Accordingly, Defendant's motion for summary judgment on Plaintiffs' claims under the OCPA should be denied as well.

**C.       This Court Has Discretion to Grant Declaratory Relief Against Defendant**

Defendant argues that because it is not a party to the lease agreements, this Court does not have jurisdiction to declare provisions in these leases unconscionable and unenforceable, nor is the Court entitled to sever the unlawful provisions from these lease agreements.

Defendant's simplistic argument overlooks its ubiquitous involvement in all aspects of the leasing, management, maintenance, and finances of the properties under its control.  In addition to Defendant's exclusive involvement in the leasing and management operations of all apartment buildings (*see* Facts 4 and 5), the undisputed facts show that Defendant is solely responsible for *"drafting and revising the lease agreements* used at the residential apartment properties managed by Lindsey." *See* Fact 2.  In the event that the Court were to grant Plaintiffs' requested declaratory relief, Defendant — and only Defendant — would be the entity with the power to ensure that the Court's relief was carried out through the amendment of *Defendant's* standard lease agreements. Defendant's claim that "there is clearly no way to ensure that the dispute over the contract terms in question would be adjudicated in a sufficiently adversary context" is completely disingenuous. MSJ at 14.  Defendant, and not the individual apartment owners, is both the drafter and the enforcer of the contract terms at issue.  Facts 4, 5, and 6.

Defendant's argument that there is no justiciable case or controversy at issue, and

that there is a lack of substantial controversy between parties having adverse legal interests is incorrect in light of the fact that there are currently tens of thousands of tenants who are trapped in lease agreements with unconscionable terms ─ agreements which Defendant drafted and over which Defendant has exclusive control.

Defendant relies on a case in which a court refused to grant declaratory relief to a *plaintiff* who was not a party to the contract at issue. MSJ at 14 ) (citing *Choate v. U.S.*, 413 F. Supp. 475 (N.D. Okla. 1976). *Choate*, however, was a case in which a television viewer attempted to obtain a restraining order to compel the United States of America, the State of Oklahoma, the National Collegiate Athletic Association, and the American Broadcasting Companies, to broadcast a football game. *Choate*, 413 F. Supp. at 477. The matter at hand is clearly distinguishable. Here, Plaintiffs are parties to the contracts at issue, and have adverse interests to Defendant, the entity who drafts and enforces the contracts. Tellingly, Defendant does not cite to a single case which prohibits a *plaintiff* who is a party to a contract from pursuing declaratory relief against the entity which drafted and enforces that same contract.

Accordingly, because this Court has the authority to grant the relief requested, summary judgment on Plaintiffs' claim for declaratory relief should be denied at this stage in the proceedings.

**D.    Because There are Circumstances Under Which Defendant Can Be Found to Have Owed Plaintiffs a Duty of Good Faith and Fair Dealing, Summary Judgment is Inappropriate**

Defendant argues that Plaintiffs' claim for breach of the covenant of good faith and

fair dealing "fails as a matter of law" because Defendant is not a party to the contract in question.[2] According to Defendant, this issue has been settled by *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 912-13 (Okla. 1982), which holds that a cause of action for breach of the implied duty of good faith and fair dealing "will not lie against a stranger to the contract." MSJ at 15. The law in Oklahoma, however, is not as simple and straightforward as Defendant would have this Court believe.

While "normally" only the parties to a contract owe a duty of good faith and fair dealing "these rules are not absolutes; there are exceptions." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1101 (Okla. 2005) (discussing *Timmons*). As the court in held in *Badillo* (albeit in the insurance context):

> When a non-party to the insurance contract, based on the specific facts and circumstances existent, engages in activities or conduct such that it may be found to be acting sufficiently like an insurer so that a special relationship can be said to exist between the entity and the insured, we have made it clear that imposition upon said entity of the same duty of good faith and fair dealing as that imposed on the actual insurer issuing the insurance policy is appropriate.

*Id*. (citing *Wathor v. Mutual Assurance Admin. Inc.*, 87 P.3d 559, 563-64 (Okla. 2004).

---

[2] To the extent Defendant argues that this cause of action fails because it only applies in the insurance and employment contexts ─ this is untrue. It is undisputed that "[e]very contract in Oklahoma contains an implied duty of good faith and fair dealing." *Gens v. Casady School*, 177 P.3d 565, 570 (Okla. 2008).

In other words, a lack of contractual privity does not foreclose the possibility of Plaintiffs succeeding on their breach of the implied duty of good faith and fair dealing claims.

In *Wolf v. Prudential Ins. Co.*, 50 F.3d 793 (10th Cir. 1995*)*, the Tenth Circuit faced the same issue, and applying Oklahoma law, "refused to decide the issue by simply concluding that the plan administrator was a stranger to the insurance contract." *Wathor v. Mutual Assurance Admin. Inc.*, 87 P.3d 559, 562 (Okla. 2004) (discussing and following *Wolf*).  Instead, the *Wolf* court rejected *Timmons* and held that "[w]e believe the analysis should focus more on the factual question of whether the administrator acts like an insurer such that a 'special relationship' between the administrator and insured could give rise to a duty of good faith." *Wolf*, 50 F.3d at 797.  After much discussion, the court held that the third party administrator did in fact owe a duty of good faith and fair dealing to the plaintiff because, although it was not a party to the contract, it "had the power, motive and opportunity to act unscrupulously." *Id*. at 798.[3]

Here, Plaintiffs have alleged that Defendant has the power, motive and opportunity to act unscrupulously (and did act unscrupulously) and Defendant has put forth no evidence to the contrary.  Indeed, the undisputed facts show that Defendant has the

---

[3] Defendant could also be found to owe Plaintiffs a duty of good faith and fair dealing on the ground that the property owners and Defendant engaged in a joint venture. *See, e.g., Ballesteros v. American Standard Ins. Co.*, 436 F. Supp. 2d 1070, 1079 (D. Ariz. 2006) ("Thus, as the insurer and agent ... were viewed to be involved in a joint venture, both the insurer and the insurer's agent (despite the lack of contractual privity) owed a common duty to the insureds to act in good faith; the insurer's agent, therefore, could be held jointly and severally liable for bad faith.") (citing *Farr v. Transamerica Occidental Life Ins. Co. Of California*, 699 P.2d 376, 386 (Ariz. App. 1984).

exclusive power "to organize, manage, supervise, and conduct *all leasing operations*." Facts 5 and 6.

Additionally, and probably most importantly for purposes of this motion, Plaintiffs have not yet had the opportunity to fully explore these issues in discovery because, to date, discovery has been limited exclusively to the "proper defendant" issue. Because there are circumstances under which Defendant could be found to have owed Plaintiff a duty of good faith and faith dealing, summary judgment would be inappropriate at this stage in the proceedings.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied in its entirety.

Dated: March 31, 2008                              Respectfully submitted,

                                                   THE WEST LAW FIRM
                                                   ATTORNEYS FOR PLAINTIFFS


                                                   s/Terry W. West
                                                   TERRY W. WEST, OBA NO. 9496
                                                   BRADLEY C. WEST, OBA NO. 13476
                                                   124 West Highland
                                                   Shawnee, Oklahoma 74802-0698
                                                   Tel: 405-275-0040
                                                   Fax: 405-275-0052

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 31st day of March, 2008, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jeremy K. Webb
Sidney G. Dunagan
Amy M. Stipe
*Attorney for Defendant*

                                        By:  s/Terry W. West
                                                  Terry W. West