## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KEITH FUQUA, an individual, | ) | |
| STACY FUQUA, an individual, | ) | |
| on behalf of themselves, and all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. CIV-07-827-HE |
| | ) | |
| LINDSEY MANAGEMENT CO., INC., | ) | |
| and DOES 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

In this case, plaintiffs Keith and Stacy Fuqua assert defendant Lindsey Management Co., Inc. has violated the provisions of the Oklahoma Residential Landlord and Tenant Act, 41 Okla. Stat. §101, *et seq.*, (the "ORLTA") by its inclusion, in their residential lease, of improper provisions related to liquidated damages and to termination notices and automatic renewal. They also assert the inclusion of these provisions constitutes a violation of the Oklahoma Consumer Protection Act, 15 Okla. Stat. §751, *et seq.*, and a breach of the implied covenant of good faith and fair dealing.[1] In addition to pressing their individual claims, plaintiffs seek to assert claims on behalf of a class composed of tenants similarly

---

[1]*The petition (this case was removed from Oklahoma state court) purports to state five causes of action. However, two of them, addressing declaratory relief and severance of the disputed provisions from the leases, appear to go to form of remedy rather than being an independent basis for claim.*

situated in other states where defendant operates, relying on parallel or similar provisions of law in those states.[2]

Defendant has moved for summary judgment on the basis that it is not a party to the lease contract in issue and can therefore not be liable for any contract-based claims, including any breach of the implied duty of good faith and fair dealing.  Further, to the extent plaintiffs claims are based on alleged violations of the ORLTA, defendant argues it is not a "landlord" within the meaning of that Act and hence not covered by it.  Defendant also argues that by reason of its status it has not, as a matter of law, violated the Oklahoma Consumer Protection Act.  Plaintiffs have responded to defendant's motion and defendant has replied.[3]

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation and citation omitted).  Viewing the evidence and any reasonable inferences that might be drawn from it in the light most

---

[2]*The petition identifies the states of Alabama, Arkansas, Kansas, Mississippi, Missouri, Nebraska, Tennessee and Texas in addition to Oklahoma, referencing the residential landlord and tenant statutes and/or consumer protection statutes in those states.*

[3]*Given that summary judgment briefing is complete, the action should be dismissed as to the unknown "Does 1 through 10, inclusive" named in the caption because plaintiffs have failed to identify and serve these parties within the time period provided under Fed. R. Civ. P. 4(m).*

favorable to the nonmoving party, <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179, 1182 (10th Cir. 2003), the court concludes defendant's motion must be granted.

## <u>DISCUSSION</u>

Much of defendant's motion is directed to its argument that it is not a party to the lease agreement with plaintiffs or to lease agreements with others similarly situated.[4] Plaintiffs do not directly dispute that assertion, but argue rather that, while defendant may not be a party to the lease, it is also not a "stranger" to it.  In this regard, plaintiffs point to defendant's role in drafting the lease agreement, its exclusive authority to manage leasing and other aspects of the lease relationship, and its extensive control over the various complexes covered by this or other leases.  The submissions of the parties make it clear that defendant is not a party to the lease agreement with plaintiffs.  That agreement identifies the parties to it as the plaintiffs and The Greens of Moore as the "owner."  The signature block on the lease further identifies the signing party as The Greens at Moore (along with a signature by an owner representative).  There is nothing in the text of the lease to indicate that defendant Lindsey Management Co. Inc. is a party to it.   Further, the petition does not allege and plaintiffs do not suggest any basis for ignoring the corporate or other formalities attendant to the separate status of The Greens at Moore and defendant.[5]

---

[4]*Indeed, defendant's summary judgment motion is entirely directed to the consequences flowing from  its status as a management agent  — what it terms the "proper party" issue — which is consistent with the court's previous order permitting an initial determination of that issue prior to discovery on broader issues in the case.  Order [Doc. #29], November 28, 2007.*

[5]*Defendant's statement of undisputed facts asserts that The Greens at Moore, L.P., the property owner, is not a "parent, affiliate or subsidiary" of defendant, relying on an affidavit to that*

If plaintiffs were asserting claims here that were in the nature of a breach of contract, defendant's non-party status as to the lease would end the issue.[6]  However, that is not (with one possible exception, discussed hereafter) the nature of the claims plaintiffs make.  Rather, plaintiffs assert what are essentially three claims: (1) for violation of the Oklahoma Residential Landlord and Tenant Act, (2) for violation of the Oklahoma Consumer Protection Act, and (3) for breach of the duty of good faith and fair dealing.

1.  <u>The ORLTA claim</u>.  Plaintiffs allege the ORLTA has been violated by the inclusion in the lease agreement of provisions relating to liquidated damages and to notice required to be given by the tenant prior to expiration of the lease term.  Plaintiffs do not identify with particularity the provisions of the ORLTA alleged to have been violated, but both parties appear to concede the question of whether defendant has potential liability under the ORLTA turns on the question of whether it qualifies as a "landlord" under the Act.[7]

Section 102 of the Act defines "landlord", in pertinent part, as follows (unless the

---

[6] effect signed by the president of defendant.  *Fact 10.  To the extent that the assertion and affidavit address "affiliate" status, they are at least open to dispute and are perhaps flatly false.  Both The Greens at Moore and defendant are organized under Arkansas law and based in Fayetteville, Arkansas.  The management agreement, Article VIII, indicates James E. Lindsey is the contact person for The Greens at Moore.  Paragraph (G) of Article IX of the same agreement recites that Mr. Lindsey is the controlling shareholder of defendant and that certain persons employed by defendant, apparently Mr. Lindsey's family members, cannot be fired without the consent of Mr. Lindsey or his successor entity.  If "affiliate" status was determinative of the issues involved here, the result might well be different.  See Management Agreement, Exhibit C to plaintiffs' brief.*

[6] *Plaintiffs do not suggest, and there is no apparent reason to assume, that they are third party beneficiaries of the management agreement to which defendant <u>was</u> a party.*

[7] *Some of the Act's provisions explicitly apply to "parties."  See §§112, 113.  Others impose duties on the "landlord" or the "lessor."*

4

context otherwise requires):

> 5. "Landlord" means the owner, lessor or sublessor of the dwelling unit or the building of which it is a part ... and it also means a manager of the premises who fails to comply with the disclosure provisions of Section 116 of this title.

Here, the undisputed facts make clear that defendant is not the owner of the property. Further, although plaintiffs argue to the contrary, it is also not the lessor of it.[8]  A lessor is ordinarily understood to be the party to whom the possessory interest in the real estate will revert at the conclusion of the lease and that, of course, is generally the owner.  *See generally,* 49 Am. Jur. 2d Landlord and Tenant §1 (also noting that "lessor" and "landlord" are often used interchangeably).  Plaintiffs have not identified any authority to suggest that the Oklahoma legislature intended its use of the word "lessor" to reach managers or management companies acting on behalf of the owner/lessor.  Rather, the language of the statute suggests the contrary: it lists owners and lessors as being "landlords" under the Act and then states that "also" covered are certain premises managers.  The language of the safe harbor provision (*i.e.*, covering managers who made disclosures pursuant to Section 116) thus suggests the legislature viewed certain managers as having liability in addition to (not as a subset of) lessors.  There is nothing to suggest it intended to subject managers, i.e. agents for fully disclosed principals, to liability under the Act if they made the necessary disclosures.  Therefore, defendant is subject to liability based on the ORLTA only if it is a

---

[8]*The Uniform Commercial Code definition of lessor in the context of personal property leases, relied on by plaintiffs, is inapplicable.*

manager which has failed to make the necessary disclosures to the tenant.[9]

It is undisputed that defendant qualifies as a "manager" of the premises within the meaning of the Act.  Further, while neither party addresses the issue in other than conclusory fashion, there appears to be no dispute that plaintiffs received the disclosures required by Section 116 of the Act.  That section requires that the landlord or someone authorized to enter into the lease on the landlord's behalf disclose to the tenant in writing, at or before the commencement of the tenancy, (1) the name and address of the manager, (2) the name and address of the owners, and (3) the name and address of the person authorized to act on behalf of the owner in accepting notices and service of process.  Here, paragraph 36 of the lease appears to meet requirements (1) and (3), in that it identifies the manager and its address, which is also the agent and address for service of legal process.[10]  As to requirement (2), paragraph 1 of the lease clearly identifies The Greens at Moore as the owner and shows a street address for the property of 2116 S. Santa Fe, Moore, Oklahoma.  This, plus the listing of a service agent for an artificial entity such as defendant satisfies the statute's requirement

_____

[9]*This conclusion is consistent with the only authority which appears to have focused on a similar question under an act like the ORLTA (which is largely, though not completely, drawn from the Residential Landlord and Tenant Act adopted by the Commissioners on Uniform State Laws). In Dikeman v. Carla Properties Ltd., 127 Or.App. 53, 56-57, 871 P.2d 474, 478 (1994), the court concluded a management company which made the necessary disclosures did not qualify as a "landlord" under the Oregon act.*

[10]*The lease agreement is attached to plaintiff's brief as Exhibit A.  Paragraph 36 provides: "36. SERVICE OF PROCESS/AUTHORIZED REPRESENTATIVE.  Notices to Owner under this Lease Contract may be delivered to the on-site manager at the apartment community's leasing office.  Service of legal process may be made on Owner's agent, Lindsey Management Co., Inc., c/o Roy Stanley, President, 1165 Joyce Boulevard, Fayetteville, Arkansas 72703."  Although the language does not literally say the agent is the on-site manager, that seems the fair import of the provision.*

that the owner's address be disclosed.[11]   In short, the undisputed facts establish that disclosures were made to plaintiffs sufficient to <u>avoid</u> subjecting defendant, as a manager, to liability under the  Act.  As a result, defendant is not subject to liability in connection with any violation of the Act which plaintiffs might ultimately establish.  Defendant's motion must therefore be granted insofar as the ORLTA claim is concerned.

2.  <u>The Consumer Protection Act claim</u>.  Plaintiffs assert that, even if defendant's relationship to the challenged lease provisions does not subject it to liability under the ORLTA, it is nonetheless liable for the same conduct under the Oklahoma Consumer Protection Act, 15 Okla. Stat. §751 et seq. ("OCPA" hereafter).[12]   Defendant essentially argues that, since it is not directly liable under the ORLTA for violating that act, it cannot be indirectly liable for the same conduct via a claim under the OCPA.

Judging from the submissions of the parties, there is little, if any, Oklahoma authority directly addressing the question presented — both parties largely confine themselves to citing the elements of an OCPA claim and pronouncing that the result in this case is therefore clear or obvious.   The court cannot say the issue is either clear or obvious, but nonetheless concludes the Oklahoma courts would not recognize an OCPA claim in the circumstances

---

[11]*Defendant is a limited liability company organized under the laws of the State of Arkansas.*

[12]*The elements of a claim under the OCPA are (1) that defendant engaged in an unlawful practice as defined in 15 Okla. Stat. §753, (2) that the challenged practice occurred in the course of defendant's business, (3) that plaintiff, as a consumer, suffered an injury in fact, and (4) that the challenged practice caused plaintiff's injury.  <u>Patterson v. Beall</u>, 19 P.3d 839, 846 (Okla. 2000). Unlawful practices are identified in 15 Okla. Stat. §753, the "catchall provision" of which refers to any "unfair ... practice as defined in section 752."  Id.*

existing here.

Plaintiffs seek to impose liability here on the management company for the owner of the apartment complex, rather than on the owner/landlord itself.  They do so based on the assertion that the involved lease provisions violate the ORLTA.   However, as noted above, the ORLTA specifically addresses the circumstances in which the owners agent, i.e. a management company, may be liable for violation of the act.   That act provides what is essentially a safe harbor for managers as to whom the necessary disclosures, per §116 of the Act, are made.   Although violations of the OCPA are not limited to persons in contractual privity with a plaintiff and the act is to be interpreted liberally to achieve its remedial purposes, the court concludes the general provisions of the OCPA may not be relied upon to supplant a specific legislative determination that conduct is not actionable, at least where the plaintiff relies on the same identical conduct that is the subject of the more specific legislative enactment.[13]  Given the nature of the underlying acts upon which plaintiffs seek to impose liability on defendant, summary judgment must therefore be entered here as to plaintiffs' OCPA claims.

3.  <u>Claim for breach of implied covenant of good faith and fair dealing</u>.  Plaintiffs allege that inclusion of the referenced lease provisions also violates a duty of good faith and

---

[13]See <u>Major v. Microsoft Corp.</u>, 60 P.3d 511, 517-18 (Okla. Civ. App. 2002), concluding, in an antitrust context, that the OCPA should not be applied so as to reach a result inconsistent with the standards of the state's antitrust laws applied to the same conduct.  That opinion refers to <u>Blewett v. Abbott Laboratories</u>, 86 Wash. App. 782, 938 P.2d 842 (1997): ("[T]his is the same claim with a different label .... We will not interpret the state antitrust law in a manner that 'rewards creative pleading at the expense of consistent application of legal principles.'")

fair dealing owed by defendant to plaintiffs.  Plaintiffs allude both to cases involving claims for breach of the contractual duty of good faith and fair dealing and to cases involving the tort of bad faith breach.  The reach of the two theories of recovery is not the same.

It is true, as plaintiffs argue, that Oklahoma recognizes an implied duty of good faith and fair dealing which inheres in every contract.  Gens v. Casady School, 177 P.3d 565 (Okla. 2008).  However, as that duty is grounded in the contract, its breach does not create a claim against a non-party to the contract.  Here, as a non-party to the lease agreement, defendant cannot be liable for breach of the implied contractual duty of good faith and fair dealing.

Oklahoma law does, however, recognize in some circumstances a tort of bad faith breach of contract based on an implied in law obligation.  The circumstances in which the tort of bad faith breach of contract has been recognized is not co-extensive with the contractual duty of good faith,[14] but appears to have been limited to contracts of insurance and to some circumstances involving the bank/customer relationship.  See Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005) (insurance), Beshara v. Southern Nat'l. Bank, 928 P.2d 280, 287-288 (Okla. 1996) (bank/customer), and  Christian v. American Home Assurance Co., 577 P.2d 899, 904-05 (Okla. 1977)(insurance).  Plaintiffs have not pointed to any Oklahoma authority suggesting a tort claim for bad faith breach of contract would be available in the landlord/tenant context nor have they pointed to any authority

---

[14]See Gens, 177 P.3d at 570.  After concluding a claim for breach of the contractual duty of good faith had been stated, the court stated: "It is of little consequence whether the bad faith breach might result in independent tort liability."

which would suggest that result where a landlord's agent (*i.e.*, a property manager) was involved. Given the absence of such authority, particularly where Oklahoma has specifically addressed a manager's duties to tenants in a more specific context, the court concludes Oklahoma would not recognize a claim for tortious breach of contract in the circumstances existing here. Accordingly, defendant's motion must be sustained as to this claim as well.

## CONCLUSION

In light of the foregoing, defendant's motion for summary judgment [Doc. # 31] is **GRANTED** as to all claims. Whatever basis for claim plaintiffs may have against the owner/lessor of the premises they rented,[15] they have not set forth facts sufficient to create a justiciable issue as to a basis for claim against the defendant property management company. Discovery on broader issues in the case was previously stayed pending a determination of the threshold issue of whether defendant was properly named as a party. Now that the court has ruled on this threshold issue, there are no remaining claims. The court's resolution of the "proper party" issue in defendant's favor renders consideration of other issues, including plaintiffs' class action allegations, unnecessary. Plaintiffs' action as to the unidentified "Does 1 through 10, inclusive" is therefore **DISMISSED**.

---

[15]*The court expresses no view on whether the challenged lease agreements contain unlawful, unfair, and unconscionable terms as alleged by plaintiffs.*

**IT IS SO ORDERED.**

Dated this <u>22nd</u> day of July, 2008.

JOE HEATON
UNITED STATES DISTRICT JUDGE